# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**LINDA H. HARRIS**                                                                         **PLAINTIFF**

**v.**                                                                   **Civil Action No. 1:06CV35-EMB**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security**                                                  **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Linda H. Harris seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for disability benefits under Title II. The parties in this case have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. The Court, having duly considered the submissions of the parties, the administrative record and the applicable law, rules as follows.

## Procedural History

Plaintiff filed an application for disability benefits under Title II on October 9, 2002, alleging disability since August 1, 2002. (Tr. 92-95). The application was denied initially and on reconsideration. (Tr. 27-40).

In a hearing decision dated July 14, 2005, an administrative law judge ("ALJ") found that Plaintiff was not disabled as defined in the Act. (Tr. 16-24, Finding No. 14). Plaintiff filed a request for review of that decision, which the Appeals Council denied on December 23, 2005. (Tr. 6-8). The ALJ's hearing decision is now ripe for review under section 205(g) of the Social

Security Act, 42 U.S.C. § 405(g).

Plaintiff's insured status for Title II ended on September 30, 2006. (Tr. 103). For insured status under the Act, an individual is required to have 20 quarters of coverage in the 40- quarter period ending with the first quarter of disability. This is the so-called "earnings requirement." *See* 42 U.S.C. §§ 416(i)(3)(B) and 423(c)(1)(B). Plaintiff must prove that she was disabled prior to her last date of Title II insurance coverage to obtain such benefits. *See* 20 C.F.R. §§ 404.130 and 404.131.

## Facts

Plaintiff was born May 15, 1954 (Tr. 92) and was 51 years of age at the time of the hearing decision on July 14, 2005 (Tr. 16, 24). Plaintiff completed a GED. (Tr. 112). Plaintiff had previous work experience as a factory work assembler. (Tr. 16, 107). Plaintiff alleged that she could not work due to pain in her hands, shoulders, knees, and lower back. (Tr. 106). She was five feet and three inches tall and weighed 240 pounds. (Tr. 105). After review and evaluation of the medical evidence of record, the subjective testimony at the hearing from Plaintiff (Tr. 227- 46), and the testimony of a vocational expert (Tr. 246-49), the ALJ found Plaintiff not disabled (Tr. 16-24). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform a range of light work that did not require lifting or carrying more than ten pounds frequently and twenty pounds occasionally. (Tr. 23, Finding No. 6, 24). Additionally, he found that Plaintiff could occasionally climb, balance, stoop, crouch, bend, kneel, and crawl. (Tr. 24, Finding No. 6). Based upon this RFC and vocational expert testimony, the ALJ found that Plaintiff had could perform her past work as an assembler. (Tr. 24, Finding No. 7). Given these findings, the ALJ concluded that Plaintiff

was not disabled.

## Law

The function of this Court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Spellman*, 1 F.3d at 360. This Court may not reweigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. *Id.*; *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 S.Ct. 1046, 117 L.Ed.2d 239 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. *Villa*, 895 F.2d at 1022; *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled, Plaintiff must show that she is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 (1995).

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

Plaintiff raises four issues for this appeal in her Brief: 1) whether the ALJ erroneously relied on the opinion of the state agency consultant (Pl.'s B. 8); 2) whether the ALJ's determination of not disabled was based on the VE's response to a flawed hypothetical (Pl.'s B. 11); 3) whether the ALJ failed to adequately develop the record (Pl.'s B. 13); and 4) whether the ALJ considered the combined effect of all of Plaintiff's impairments (Pl.'s B. 15). The Court will consider these issues seriatim.

*Issue No. 1*

Plaintiff essentially argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erroneously afforded greater deference to the medical source determination of Disability Determination Services ("DDS") than to the opinions of

Plaintiff's treating physician, Dr. Edward D. Hillard, and the examining consultant, Dr. Steven C. Brandon. (Pl.'s B. 8-11). Specifically, Plaintiff claims DDS did not have the benefit of Dr. Hillard's and Dr. Brandon's medical records when it made it's assessment. (Pl.'s B. 8-9). Additionally, Plaintiff argues that by the date of the administrative hearing, her condition had worsened, and the opinions of Dr. Hillard and Dr. Brandon substantiated her claims of the worsening severity of her condition. (Pl.'s B. 9).

The Court has thoroughly considered the medical evidence and is of the opinion that Plaintiff's arguments avail her very little. As an initial matter, Plaintiff provides no support for her argument that her medical records were not available to DDS. Furthermore, a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." 20 C.F.R. § 404.1527(d)(2). However, "'the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'" *Martinez v. Chater,* 64 F.3d 172, 176 (5th Cir. 1995) (*quoting Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir.1987)); *see also* 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have .").

The Fifth Circuit allows an ALJ to reject or discount the weight of a treating physician's opinion only when "good cause" is shown. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). Good cause may

exist when physician statements are conclusory and brief; when statements are unsupported by medically acceptable clinical, laboratory, or diagnostic techniques; otherwise unsupported by the evidence; or when the treating physician is not credible because (s)he is "leaning over backwards to support the application for disability benefits." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *see also Myers*, 238 F.3d at 621 (citing *Greenspan*, 38 F.3d at 237); *Newton*, 209 F.3d at 456. When an adjudicator does not assign controlling weight to the opinion of the treating physician, regulations require articulation of reasons therefor. 20 C.F.R. § 404.1527(d)(2) (2002); *see also Myers*, 238 F.3d at 621.

On October 29, 2001, Plaintiff was treated by Edward Hillard, M.D., who stated that an MRI had not shown any tear of the rotator cuff or impingement of Plaintiff's shoulder. (Tr. 198). Anti-inflammatory medication would be continued and arthroscopic debridement would be likely if Plaintiff did not get better. (Tr. 198). On February 13, 2002, Dr. Hillard stated that Plaintiff was no better and that she very likely had a torn rotator cuff. (Tr. 198). Dr. Hillard wished for a surgical or arthroscopic procedure to be done as soon as possible. (Tr. 198).

Almost a year later on January 7, 2003, Plaintiff underwent a consultative examination performed by Barbara Fleetwood, M.D. (Tr. 186-87). Plaintiff reported cooking two to three times each week. (Tr. 186). She reported that she cleaned, dusted, and vacuumed "a little." (Tr. 186). Plaintiff said that she could walk one hour in Wal-Mart and could stand 20 minutes in the kitchen. (Tr. 186). Range of motion testing of the neck revealed normal extension and flexion. (Tr. 186-87). Lateral movement was 75 percent of normal. (Tr. 187). Plaintiff was "not particularly tender over her spine at this time." (Tr. 187). Plaintiff was flat-footed and protected her right knee when she walked. (Tr. 187). Plaintiff could squat half way and used a table to

pull herself back up. (Tr. 187). She had normal ranges of motion in all joints. (Tr. 187). Strength was normal in the upper arm, forearm, and hand grips. (Tr. 187). Reflexes were normal. (Tr. 187). Lower extremities examination indicated large legs and tenderness over both knees and ankles. (Tr. 187). Strength was normal or near normal in each leg. (Tr. 187). There was palpable crepitation in both knees, worse on the right. (Tr. 187). Sensation was normal. (Tr. 197). X-ray showed slightly narrowed disc space on the left, indicating early degenerative joint disease. (Tr. 187). Dr. Fleetwood noted normal ranges of motion and strength in all joints and normal grip and sensation. (Tr. 187).

On March 17, 2003, Plaintiff was examined by Dr. Hillard, who stated that Plaintiff was having multiple problems and had not been taking Celebrex for four months. (Tr. 197). Plaintiff complained of painful joints and of dizziness and falling. (Tr. 197).

Plaintiff was consultatively examined by Steven C. Brandon, M.D., on April 8, 2004. (Tr. 206-10). Examination revealed that neck range of motion was reduced due to obesity and a short neck. (Tr. 208). Plaintiff's back had flexion to 80 (out of 90) degrees and full extension. (Tr. 208). Grip strength was four of five and bilaterally equal. (Tr. 208). Reflexes were normal, although Plaintiff walked with a limp. (Tr. 208). The arch of her right foot was flattened, her left arch less so. (Tr. 208). Dr. Brandon stated Plaintiff did not need an assistive device to walk short distances. (Tr. 208). He noted that Plaintiff had lower extremity pain, primarily due to her foot. (Tr. 208). Plaintiff was unable to squat, or heel and toe walk. (Tr. 208). Dr. Brandon noted an abnormal sensory exam due to diminished sensation of S1 on the left side, although he noted that this was a subjective finding. (Tr. 208). He said Plaintiff was obese and had diminished range of motion in lumbar flexion. (Tr. 208). He also indicated that Plaintiff had a

7

heart murmur, shoulder pain with "no significant abnormality," osteoarthritis of the hands, a history of gastroesophageal reflux, marginally diminished vision, and a history of diabetes mellitus. (Tr. 209). He indicated that Plaintiff could occasionally lift ten pounds, secondary to obesity, reduced grip strength, and left foot abnormality. (Tr. 209). He also indicated that Plaintiff's standing and walk were affected by her flattened right foot and her limp. (Tr. 209). He concluded that Plaintiff could not walk without interruption. (Tr. 209). Sitting was not affected (Tr. 209). He indicated that Plaintiff should never climb, balance, stoop, crouch, kneel, or crawl, due to her obesity, foot problems, gait and instability. (Tr. 209). Additionally, he indicated that Plaintiff was unable to reach above her head, but had no handling or reaching limitation. (Tr. 209). Seeing, hearing, and speaking were unaffected. (Tr. 209). Heights, moving machinery, humidity, and vibration were restricted. (Tr. 210). X-rays showed normal shoulders and a normal lumbar spine. (Tr. 210).

After the ALJ's decision on July 14, 2005, Plaintiff was treated by Dr. Hillard on September 23, 2005, over two years after her last visit. Dr. Hillard noted that Plaintiff complained of continued dizziness and intractable pain in numerous areas. (Tr. 217). Plaintiff complained that her left knee sometimes gave way. (Tr. 217). Dr. Hillard indicated that Plaintiff had previously had an anterior cruciate ligament reconstruction. (Tr. 217). He described the knee as having a slightly positive drawer sign, but no gross instability. (Tr. 217). Plaintiff complained of an inability to lose weight due to inactivity caused by her diabetes and hyperthyroidism [sic]. (Tr. 217). Dr. Hillard stated that Plaintiff had symptoms of peripheral neuropathy. (Tr. 217). X-rays showed a normal ankle and early, severe degenerative changes in her knee. (Tr. 217). A total knee replacement in the future was likely (Tr. 217). Plaintiff

8

complained of tenderness and pain in both hands. (Tr. 217). Dr. Hillard diagnosed diabetic neuropathy, peripheral neuropathy, severe degenerative arthritic disease, hyperthyroidism [sic], and diabetes mellitus. (Tr. 217). He also indicated that Plaintiff was unable to work. (Tr. 217). He stated that Plaintiff had tried and failed to work numerous times. (Tr. 217). He considered her condition permanent (Tr. 217). He recommended a consultation with a neurologist. (Tr. 217).

In this case, the ALJ stated adequate cause for assigning minimal weight to Dr. Brandon's RFC assessment. (Tr. 21). Notwithstanding, Dr. Brandon's findings do very little to help Plaintiff's claim of disability. In a hypothetical posed to the VE, the ALJ proposed a hypothetical individual the same age, educational background and work history as Plaintiff and with most of the limitations found by Dr. Brandon. (Tr. 247). Though the VE found the individual could not perform Plaintiff's past work, the VE determined that there was alternative work the hypothetical individual could perform. (Tr. 247-48).

And, even though the ALJ failed to express reasons for rejecting the opinion of Dr. Hillard, the Court finds no reversible error because substantial evidence in the record contradicts Dr. Hillard's opinion. Plaintiff places a lot of emphasis on the fact that Dr. Hillard's February 2002 report indicated disabling shoulder and knee impairments. (Pl.'s B. 9). However, Dr. Fleetwood's examination of Plaintiff in January 2003 revealed normal range of motion and normal strength in all joints despite some tenderness over the knees and shoulder and "limited squatting ability." (Tr. 186-87). Indeed, Plaintiff reported to Dr. Fleetwood that she did some housework and that she could walk in Wal-Mart for one hour. (Tr. 186). Furthermore, the record indicates that Dr. Hillard's 2005 opinion of permanent disability was issued after just one

9

examination performed over two years after he had last treated Plaintiff. (Tr. 217). And, though not available to the ALJ, this evidence was considered by the Appeals Council, who determined that the evidence provided no basis for changing the ALJ's decision. (Tr. 6-7). Based on the foregoing, the Court finds no reversible error as regards the first issue.

*Issue No. 2*

Plaintiff next argues that the ALJ failed to list all of her impairments in the first hypothetical question posed to the VE. (Pl.'s B. 11). Within this argument, Plaintiff also attacks the ALJ's RFC finding, as she complains that the ALJ's proffer of a hypothetical individual capable of light work was contrary to the medical evidence. (Pl.'s B. 12). In support of her contentions, Plaintiff relies mainly on the opinions of Dr. Hillard and Dr. Brandon. (Pl's B. 12-13).

As discussed above, substantial evidence supports the ALJ's decision to discount the opinions of Dr. Hillard and Dr. Brandon. Moreover, substantial medical evidence in the record supports the ALJ's RFC finding. When a hypothetical question reasonably incorporates all of the impairments found by the ALJ, and claimant's representative was provided an opportunity to "correct any defect" about additional limitations, the hypothetical question is sufficient. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir.1994). In this case, the ALJ's first hypothetical reasonably included all of the impairments found by him, and Plaintiff's attorney had an opportunity to correct any defect but failed to do so (Tr. 249). Accordingly, the ALJ' s hypothetical was sufficient, and this assignment of error is without merit.

*Issue No. 3*

Here, Plaintiff argues the Commissioner failed to adequately develop the record. (Pl.'s B.

13-14). Specifically, Plaintiff suggests the ALJ should have re-contacted Dr. Hillard for help in resolving inconsistencies in the record. (Pl.'s B. 14). As defendant points out, beyond this general assertion, Plaintiff offers no valid reason why it was necessary for the ALJ to re-contact Dr. Hillard. (Def.'s B. 17-18). Because Plaintiff has failed to offer any credible grounds for this assignment of error, it should also be dismissed.

*Issue No. 4*

Lastly, Plaintiff argues the Commissioner failed to consider the combined effect of all of her severe impairments in reaching his decision of not disabled. (Pl.'s B. 15-17). Plaintiff claims the ALJ gave no consideration to her pain and the limitations produced by her shoulder impairment. (Pl.'s B. 17).

First, Plaintiff points to no evidence in the record supporting the existence of severe non-exertional pain. Second, as noted above, substantial medical evidence suggests that Plaintiff had normal range of motion and strength in her shoulder joints. (Tr. 187). Even Dr. Brandon's report, on which Plaintiff so heavily relies, indicates "no significant abnormality" in the shoulder beyond some pain. (Tr. 209). Ultimately, Plaintiff testified that her past job as a factory assembly worker required her to lift no more than two pounds on an occasional and frequent basis and stand "not very often." (Tr. 245). Based on the foregoing, the Court finds the ALJ adequately considered the combined effect of all of Plaintiff's *severe* impairments in determining she could return to her past work.

## **Conclusion**

Based on the foregoing, I find that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled for purposes of the subject application for benefits.

11

Accordingly, the Commissioner's determination of not disabled and the denial of disability benefits should be affirmed. A final judgment consistent with this opinion will be entered.

**THIS**, the 20th day of September, 2007.

/s/ **Eugene M. Bogen**
**U. S. MAGISTRATE JUDGE**